## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>ASHINC CORPORATION, *et al.*[1],<br><br>Debtors. | Chapter 11<br><br>Bankruptcy Case No. 12-11564 (CSS)<br><br>(Jointly Administered) |
| CATHERINE E. YOUNGMAN, LITIGATION TRUSTEE FOR ASHINC CORPORATION, ET. AL., AS SUCCESSOR TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF ASHINC CORPORATION, AND ITS AFFILIATED DEBTORS<br><br>Plaintiff,<br><br>BDCM OPPORTUNITY FUND II, LP, BLACK DIAMOND CLO 2005-1 LTD., and SPECTRUM INVESTMENT PARTNERS, L.P.,<br><br>Intervenors,<br><br>v.<br><br>YUCAIPA AMERICAN ALLIANCE FUND I, L.P., and YUCAIPA AMERICAN ALLIANCE (PARALLEL) FUND I, L.P.,<br><br>Defendants. | Bankruptcy Adv. Proc. No. 13-50530 (CSS)<br><br>Civ. Action No. 1:21-cv-00994 |

---

[1] The Debtors in these cases, along with the federal tax identification number (or Canadian business number where applicable) for each of the Debtors, are: ASHINC Corporation (f/k/a Allied Systems Holdings, Inc.) (58- 0360550); AAINC Corporation (f/k/a Allied Automotive Group, Inc.) (58-2201081); AFBLLC LLC (f/k/a Allied Freight Broker LLC) (59-2876864); ASCCO (Canada) Company (f/k/a Allied Systems (Canada) Company) (90- 0169283); ASLTD L.P. (f/k/a Allied Systems, Ltd. (L.P.) (58-1710028); AXALLC LLC (f/k/a Axis Areta, LLC) (45 5215545); AXCCO Canada Company (f/k/a Axis Canada Company) (875688228); AXGINC Corporation (f/k/a Axis Group, Inc.) (58-2204628); Commercial Carriers, Inc. (38-0436930); CTSINC Corporation (f/k/a CT Services, Inc.) (38 2918187); CTLLC LLC (f/k/a Cordin Transport LLC) (38-1985795); F.J. Boutell Driveway LLC (38-0365100); GACS Incorporated (58-1944786); Logistic Systems, LLC (45-4241751); Logistic Technology, LLC (45-4242057); QAT, Inc. (59-2876863); RMX LLC (31-0961359); Transport Support LLC (38-2349563); and Terminal Services LLC (91-0847582).

CATHERINE E. YOUNGMAN, LITIGATION
TRUSTEE FOR ASHINC CORPORATION, ET
AL., AS SUCCESSOR TO BDCM
OPPORTUNITY FUND II, LP, BLACK
DIAMOND CLO 2005-1 LTD., SPECTRUM
INVESTMENT PARTNERS, L.P., BLACK
DIAMOND COMMERCIAL FINANCE, L.L.C.,
as co-administrative agent, and SPECTRUM
COMMERCIAL FINANCE LLC, as co-
administrative agent,

        Plaintiff,

        v.

YUCAIPA AMERICAN ALLIANCE FUND I,
L.P., and YUCAIPA AMERICAN ALLIANCE
(PARALLEL) FUND I, L.P.,

        Defendants.

Bankruptcy Adv. Proc. No. 14-50971 (CSS)

Civ. Action No. 1:21-cv-00995

**REPLY OF APPELLANTS YUCAIPA AMERICAN ALLIANCE FUND I, L.P. AND
YUCAIPA AMERICAN ALLIANCE (PARALLEL) FUND I, L.P. TO LITIGATION
TRUSTEE'S OBJECTION TO MOTION FOR STAY OF EFFECTIVENESS AND
ENFORCEMENT OF JUDGMENT PENDING APPEAL PURSUANT TO
BANKRUPTCY RULES 7062 AND 8007**

## TABLE OF CONTENTS

**Page**

Preliminary Statement ................................................................................................ 1

Reply ........................................................................................................................... 2

I.    Likelihood of Success on Appeal ..................................................................... 2

    A.    The Bankruptcy Court Lacks Authority to Enter Final
           Orders on Non-Core Claims. ................................................................. 2

           Yucaipa Never Consented To The Bankruptcy Court's Authority........................ 4

    B.    Yucaipa Is Likely To Succeed On The Merits Of Its Claims. ............................. 6

           Yucaipa Is Likely To Prevail On Its Appeal With Respect To The Bankruptcy
           Court's Improper Entry Of A Partial Final Judgment Under Rule 54(b) .................... 6

           The Bankruptcy Court Decided Numerous Issues of Disputed Facts ......................... 7

           The Covenant Not To Sue Bars The Trustee's Breach Of Contract Claim ................. 9

           Prejudgment Interest On the Fraudulent Transfer Award .......................................... 10

II.   Irreparable Harm ............................................................................................. 11

III.  No Bond Should Be Required ......................................................................... 12

IV.   Public Interest ................................................................................................. 12

Conclusion ................................................................................................................. 13

2032940.1
DOCS_LA:339024.4 96991/001

# TABLE OF AUTHORITIES

**Page**

## Cases

*BDCM Opportunity Fund II, LP v. Yucaipa Am. Alliance Fund I, LP*
2013 WL 1290394 (N.Y. Sup. Ct. Mar. 8, 2013) .......................................................... 8

*Breeden v. Bennett (In re Bennett Funding Group, Inc.)*
367 B.R. 269 (Bankr. N.D.N.Y. 2007) ...................................................................... 3

*Burtch v. Opus, LLC (In re Opus East, LLC)*
528 B.R. 30 (Bankr. D. Del. 2015) ........................................................................ 10

*Ciena Corp. v. Nortel Networks*
Case No. 05-14, 2005 U.S. Dist. LEXIS 20095, *21, 2005 WL
1189881 (E.D. Tex. May 19, 2005) ...................................................................... 11

*Conestoga Wood Specialties v. U.S. Dept. of HHS*
724 F. 3d 377 (3rd Cir. 2013) ............................................................................. 11

*David Cutler Indus. v. Bank of Am. (In re David Cutler Indus.)*
502 B.R. 58  (Bankr. E.D. Pa. 2013) .................................................................... 10

*General Protecht Group, Inc. v. Leviton Mfg. Co.*
Case No. 10-1020, 2010 U.S. Dist. LEXIS 137160, *77, 2010 WL
5477266 (D.N.M. Dec. 7, 2010) .......................................................................... 11

*Hohe v. Casey*
868 F.2d 69 (3d Cir. 1989) ................................................................................. 11

*In re Harlin*
325 B.R. 184 (Bankr. E.D. Mich. 2005) ................................................................ 11

*In re Pa. Gear Corp.*
2008 WL 2370169, at *5 (Bankr. E.D. Pa. Bankr. Apr. 22, 2008) ............................... 6

*N.Y. Skyline, Inc. v. Empire State Bldg. Tr. Co. L.L.C. (In re N.Y. Skyline, Inc.)*
512 B.R. 159 (S.D.N.Y. 2014) ............................................................................. 4

*Norfolk S. Corp. v. Oberly*
594 F. Supp. 514 (D. Del. 1984) ......................................................................... 11

*USA Gymnastics v. Ace Am. Ins. Co. (In re USA Gymnastics)*
Case No. 18-9108, Adv. No. 19-50012, 2019 Bankr. LEXIS 3972
(Bankr. S.D. Ind. Oct. 24, 2019) ......................................................................... 3

*Weisfelner v. Blavatnik (In re Lyondell Chem. Co.)*
467 B.R. 712 (S.D.N.Y. 2012) ............................................................................. 4

*Wellness Int'l Network, Ltd. v. Sharif*
135 S. Ct. 1932 (2015) ................................................................................... 2, 3

## Statutes

11 U.S.C. §550(a) ...................................................................................... 10, 11

28 U.S.C. §157(b) .......................................................................................... 4

28 U.S.C. §157(c) .......................................................................................... 2

28 U.S.C. §157(c)(1) ...................................................................................... 2

ii

Fed. R. Bankr. P. 7012 .................................................................................................. 4, 5

Fed. R. Bankr. P. 7012(b) ............................................................................................. 2, 4

Fed. R. Bankr. P. 7012-1 .................................................................................................. 5

Fed. R. Bankr. P. 7062 ...................................................................................................... 1

Fed. R. Bankr. P. 8007 ...................................................................................................... 1

Fed. R. Civ. P. 54(b) ......................................................................................................... 6

**Other Authorities**

11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane
    *Federal Practice and Procedure* § 2948.1 (2d ed.1995) ........................................... 11

Appellants Yucaipa American Alliance Fund I, L.P. and Yucaipa American Alliance (Parallel) Fund I, L.P. (collectively, "Yucaipa")[1] by and through their undersigned counsel, hereby replies (the "Reply") to *The Litigation Trustee's Opposition to Yucaipa's Emergency Motion for Stay of Effectiveness and Enforcement of Judgment Pending Appeal Pursuant to Bankruptcy Rules 7062 and 8007* (the "Objection").   In support of this Reply, Yucaipa respectfully states as follows:

## Preliminary Statement

1.      A stay pending appeal is warranted in this case.  The Judgment that is the subject of the appeal – which obligates Yucaipa to pay a massive damages award on a state law breach of contract claim that is indisputably "non-core" – was entered by a court without constitutional or statutory authority to do so and on the basis of other procedural and substantive errors. Absent a stay, however, the Trustee can be expected to proceed immediately to enforce that Judgment, which would irreparably harm Yucaipa, and sacrifice the public's interest in upholding the constitution, by denying Yucaipa of its right to have the Trustee's state law claims adjudicated by an Article III court.

2.      The Trustee's arguments that Yucaipa consented to the Bankruptcy Court's authority are unconvincing.  The Trustee does not contend that Yucaipa ever expressly consented to the Bankruptcy Court's authority.  Even if Yucaipa could have consented "impliedly" to the Bankruptcy Court's authority, the Trustee points to no relevant evidence that Yucaipa ever knowingly and voluntarily consented.  Indeed, the Trustee purports to establish a "***knowing* and *voluntary***" waiver by pointing to insignificant omissions, rather than any affirmative conduct, on the part of Yucaipa. The Trustee also fails to meaningfully counter the numerous other grounds

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the *Emergency Motion of Appellants Yucaipa American Alliance Fund I, L.P. and Yucaipa American Alliance (Parallel) Fund I, L.P.'s Motion for Stay of Effectiveness and Enforcement of Judgment Pending Appeal Pursuant to Bankruptcy Rules 7062 and 8007* [Case No. 21-cv-994, D.I. 4; Case No. 21-cv-995, D.I. 4] (the "Motion").

described in the Motion that support the entry of a stay, including the likelihood that the Judgment will be overturned on appeal based on clear procedural and substantive errors in the Opinion underlying the Judgment.

3.      In short, the Bankruptcy Court lacked authority to enter the Judgment and all factors relevant to the Court's decision to enter a stay of the Judgment pending the outcome of this appeal weigh decidedly in Yucaipa's favor.  The Court should, therefore, enter a stay pending appeal.

<u>**Reply**</u>

## I.      Likelihood of Success on Appeal

### A.      The Bankruptcy Court Lacks Authority to Enter Final Orders on Non-Core Claims.

4.      There is no dispute that the Bankruptcy Court lacked authority to finally adjudicate non-core claims absent Yucaipa's consent.  Pursuant to 28 U.S.C. §157(c)(1), the Bankruptcy Court could only "submit proposed findings of fact and conclusions of law to the district court" with respect to any non-core matter.  At the time the Answer was filed, Bankruptcy Rule 7012(b) stated: "In non-core proceedings final orders and judgments shall not be entered on the bankruptcy judge's order except with the express consent of the parties."  Fed. R. Bankr. P. 7012(b) (2013).  The Official Notes of Advisory Committee on Rules could not be clearer: "A final order of judgment may not be entered in a non-core proceeding heard by a bankruptcy judge unless all parties expressly consent."  Fed. R. Bankr. P. 7012(b) advisory committee's note (1987) (citing 28 U.S.C. §157(c)).[2]

---

[2] As explained in the Motion, the Supreme Court identified this very rule as providing a clear example of a rule that requires express consent, even where the Constitution might otherwise allow implied consent.  *See Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932, 1948 n.13 (2015) (citing FRBP 7012(b) as a judicial rule that "require[s] express consent where the Constitution does not.").  The Trustee's argument that Yucaipa was required to affirmatively withhold consent in its initial Answer to the Estate complaint to avoid being deemed to have consented to the Bankruptcy Court's jurisdiction, *see* Opposition, at 3-4, is flatly inconsistent with the plain text of the rule and with the Supreme Court's holding that any consent must be "knowing and voluntary."  *Id. at* 1948 (holding that "a litigant's consent—whether express or implied—must still be knowing and voluntary").

5.      There is also no dispute that Yucaipa never consented expressly to the Bankruptcy Court's authority.  Instead, the Bankruptcy Court found *implied* consent through Yucaipa's filing of a motion for summary judgment and in a vague reference to actions taken by Yucaipa in "the history of this case."  Opposition, at 6 (citing transcript).  But the Bankruptcy Court ignored the fact that Yucaipa's motion for summary judgment included an explicit statement of non-consent,[3] which precludes a finding of the requisite "knowing and voluntary" consent.[4]  *See Wellness*, 135 S. Ct. at 1948 (holding that "a litigant's consent—whether express or implied—must still be knowing and voluntary").

6.      The "history" of the case also clearly demonstrates that Yucaipa has withheld consent over the Bankruptcy Court's authority to adjudicate the Trustee's non-core claims repeatedly for years.[5]  The Bankruptcy Court's unsupported statement to the contrary ignores the Supreme Court's instruction that "reaching th[e] determination [that a party has consented] . . . require[s] a deeply factbound analysis of the procedural history unique to this protracted litigation."  *Wellness*, 575 U.S. at 1949; *cf. Men's Sportswear, Inc. v. Sasson Jeans, Inc. (In re Men's Sportswear, Inc.)*, 834 F.2d 1134, 1138 (2d Cir. 1987) ("[A] court should not lightly infer from a litigant's conduct consent to have private state-created rights adjudicated by a non-Article

---

[3] At the hearing on Yucaipa's motion for a stay in the Bankruptcy Court, the Bankruptcy Court denied the motion based, in large part, upon its mistaken belief that Yucaipa had sought summary judgment without withholding consent.  Hr. Tr. 6:10-14; 6:25-7:4  ("your client sought summary judgment on a number of actions and grounds . . . without ever mentioning that you were only seeking proposed findings of fact and conclusions of law. . .There is nothing in your brief.  There is not a word in your affirmative brief, your brief seeking affirmative relief from this Court, that in any way indicates that you are no[t] seeking a final judgment from this Court.  Not a sentence.").  After being informed of his error, and that the motion did contain an explicit statement of non-consent, the Bankruptcy Court nonetheless refused to acknowledge the significance of that statement, insisting that "I think it's significant that the briefs, again, are silent – the extensive briefs on this are silent on this matter."  *Id.* at 30:11-13 (Appx. Exh. 55).

[4] Motion at 11-12, citing *USA Gymnastics v. Ace Am. Ins. Co. (In re USA Gymnastics)*, Case No. 18-9108, Adv. No. 19-50012, 2019 Bankr. LEXIS 3972 (Bankr. S.D. Ind. Oct. 24, 2019) and *Breeden v. Bennett (In re Bennett Funding Group, Inc.)*, 367 B.R. 269, 291 (Bankr. N.D.N.Y. 2007).

[5] *See* Motion at 13 (citing examples).  The Trustee fails to cite to any substantive pleadings following *Wellness* in which Yucaipa did not withhold consent to adjudication.  Indeed, the Trustee's only example of Yucaipa's alleged implied consent through a filing in these cases is to a "Certification of Counsel concerning an amended case scheduling order."  Objection at 8.

3

III bankruptcy judge.").  No such analysis was ever undertaken.  Had it been, it would be clear that Yucaipa never knowingly and voluntarily consented to the Bankruptcy Court's authority.

### Yucaipa Never Consented To The Bankruptcy Court's Authority.

7.      The Trustee does not allege that Yucaipa expressly consented to the Bankruptcy Court's authority to enter final orders, because no express consent was ever granted.  Instead, the Trustee asserts that, because Yucaipa did not affirmatively deny the alleged core nature of certain claims asserted in the complaint in its Answer, Yucaipa admitted that the claims were "core" and impliedly consent to the Bankruptcy Court's final adjudication of those claims.  Opposition, at 3-4.  That is wrong.  There is no question that the Trustee's breach of contract claims are non-core; the Trustee does not contend otherwise.

8.      Moreover, Yucaipa merely stated in the Answer that "The allegations in Paragraph 22 of the Complaint set forth legal conclusions to which no response is required."[6] Yucaipa's "non" response did not transform inherently non-core claims into core claims over which the Bankruptcy Court had authority.  More importantly, Yucaipa's response did not constitute "express consent," as required by the Bankruptcy Rule, nor was it a "knowing and voluntary" consent to final adjudication of non-core claims by the Bankruptcy Court.  *See, e.g., Weisfelner v. Blavatnik (In re Lyondell Chem. Co.)*, 467 B.R. 712, 722 (S.D.N.Y. 2012) (recognizing that implied consent is not sufficient for purposes of Rule 7012); *see also N.Y. Skyline, Inc. v. Empire State Bldg. Tr. Co. L.L.C. (In re N.Y. Skyline, Inc.)*, 512 B.R. 159, 177 (S.D.N.Y. 2014) ("As the language in [Rule 7012(b)] suggests, express consent implies both an acknowledgment that a proceeding is non-core ***and*** assent to the bankruptcy court's entry of a

---

[6] Appx. Exh. 3 at ¶ 22.  Paragraph 22 of the complaint filed in the Estate Action stated simply: "This adversary proceeding is a 'core' proceeding pursuant to 28 U.S.C. § 157(b)."  Estate Action, D.I. 95 at ¶ 22.  The proceeding included both core and non-core claims.  *See* Trustee Supp. Appx. Exh. 62.

final judgment notwithstanding the right to have the claim determined by an Article III judge.") (emphasis added).[7]

9.      Since the version of Rule 7012 in effect at the time that Yucaipa filed its Answer clearly required express consent, the Trustee argues that an amended version of the rule enacted in 2016, which deleted the "express consent" requirement, should apply retroactively to Yucaipa. Objection at 5.  That is absurd.  Rule 7012 applies by its terms to responsive pleadings.  Yucaipa filed its responsive pleading in 2013.  An amendment to the rule three years later cannot be read to constitute implied consent.[8]

**Yucaipa's Actions In A Separate Proceeding Are Irrelevant.**

10.      The Trustee places great emphasis on actions taken by Yucaipa in an entirely separate proceeding, the so-called "Allied Adversary Proceeding."  It should go without saying, however, that Yucaipa's actions in an unrelated adversary proceeding are wholly irrelevant to the Trustee's claims against Yucaipa in *this* case, and certainly cannot constitute "knowing and voluntary" consent to the Bankruptcy Court's authority to finally adjudicate the separate non-core claims at issue in this case.  Not surprisingly, the Trustee cites no authority to suggest that actions taken in one proceeding can constitute implied consent in another proceeding.

11.      The Trustee also asserts that Yucaipa never objected to "[m]ultiple [p]rior [o]rders and [j]udgments of the Bankruptcy Court."  Objection at 7.  However, all but one of the orders and judgments cited were entered in the *separate* "Allied Adversary Proceeding."  Orders entered in an unrelated proceeding simply have no relevance to this proceeding.[9]

---

[7] The cases cited by the Trustee that are allegedly to the contrary are not persuasive in light of the Supreme Court's subsequent directive in *Wellness* that any consent must be "knowing and voluntary."  *See* Opposition, at 4.

[8] The Trustee's related argument that Rule 7012 and Local Bankruptcy Rule 7012-1 required that Yucaipa withhold consent in its response to the Trustee's summary judgment motion is baseless.  Opposition at 9.  Rule 7012 does not, by its terms, apply to responses to summary judgment motions.

[9] The only example the Trustee cites of Yucaipa's failure to raise an objection to the Bankruptcy Court's jurisdiction in this proceeding relates to a summary judgment motion that did not seek relief with respect to any of the Trustee's

5

12.     The Trustee's argument that Yucaipa cannot "revoke" its consent is equally misplaced.  Objection at 8.  Yucaipa never consented in the first place.  Notably, the only case cited by the Trustee in support of her revocation argument is *In re Pa. Gear Corp.*, 2008 WL 2370169, at *5 (Bankr. E.D. Pa. Bankr. Apr. 22, 2008), in which the defendants' responsive pleading *affirmatively admitted* the Bankruptcy Court's jurisdiction over the proceedings. Yucaipa has never admitted that the Bankruptcy Court has jurisdiction over the Trustee's non-core claims.

13.     Accordingly, Yucaipa is likely to succeed on the merits of its appeal that the Bankruptcy Court lacked final adjudicatory authority over the non-core claims, because Yucaipa has never expressly or knowingly and voluntarily consented to the Bankruptcy Court's authority.

**B.     Yucaipa Is Likely To Succeed On The Merits Of Its Claims.**

14.     In its Motion, Yucaipa explained in detail that it is likely to succeed on the merits of its appeal with respect to numerous issues.  Among other things:

> *Yucaipa is likely to prevail on its appeal with respect to the Bankruptcy Court's improper entry of a partial final judgment under Rule 54(b)*

15.     Notwithstanding the Trustee's unsupported claim to the contrary, there is significant overlap in the adjudicated and unadjudicated claims, including:

    i.   the Opinion states expressly that the Trustee's breach of duty claims "share a common nucleus of facts" with the Trustee's breach of contract claims, Opinion at 77;

    ii.  the alleged inequitable conduct that underlies the Trustee's equitable subordination claims include Yucaipa's alleged breach of contract and Yucaipa's receipt of allegedly fraudulent transfers, Opinion at 94;

    iii. the Bankruptcy Court concluded that the Trustee demonstrated that Yucaipa engaged in inequitable conduct to support her equitable

---

claims that are at issue in this proceeding.  Estate Action, D.I. 253.  Indeed, Yucaipa objected to that summary judgment motion on the basis that no relief was sought on account of any claim in the Estate Action.  That motion is, therefore, irrelevant to the issue of consent with respect to the non-core claims in the Estate Action.  Estate Action, D.I. 261.  *See* Reply Appx. Exh. 76.

subordination claims for reasons including that Yucaipa failed to make the capital contribution that forms the basis of the Trustee's breach of contract claims and Yucaipa benefited from the transfers that the Trustee seeks to avoid as alleged fraudulent transfers, Opinion at 102-104; and

iv.   the contract claims raised in the Lender Action, which are not included in the Judgment, [10] are nearly identical to the breach of contract claim asserted in the Estate Action, which is the subject of the Judgment, Opinion at 46, n. 122 (noting that the Trustee's victory on the Estate "breach of contract claim . . . subsumes the Lender Claims.").

16.     In short, the unadjudicated claims are inextricably intertwined with the claims adjudicated by the Bankruptcy Court and the remedies sought by the Trustee on certain of those claims are entirely duplicative of others.

### The Bankruptcy Court Decided Numerous Issues of Disputed Facts

17.     In the Motion, Yucaipa provided multiple examples of improper factual findings made by the Bankruptcy Court.  Motion at 19-21. The Trustee's general responses that the Bankruptcy Court reached the right result as to those issues ignores the procedural defects inherent in the Bankruptcy Court's analysis.  For example, in arguing that the Court correctly decided that the Third Amendment required Yucaipa to make a Capital Contribution in *either* cash *or* Term Loans —a key issue that forms the basis for the amount of damages in the Judgment—the Trustee argues that the Bankruptcy Court simply relied on the plain meaning of the First Lien Credit Agreement.  Opposition at 13.  But, there is no language in the First Lien Credit Agreement, or evidence anywhere else in the record, that required Yucaipa to contribute anything other than Term Loans and the Bankruptcy Court dismissed all evidence to the contrary.

18.     The Trustee also argues on page 15 of the Opposition that the Bankruptcy Court applied "binding Third Circuit holdings . . . rather than by 'weighing conflicting evidence,'" when

---

[10] Although not included in the Judgment, these almost identical non-core claims in the Lender Action are subject to a pending Bankruptcy Rule 9033 objection which this Court will determine.

it concluded that Yucaipa did not act in good faith and that Allied was, therefore, not contractually obligated to reimburse Yucaipa's legal fees. But, the Third Circuit *never* held that Yucaipa acted in bad faith and Yucaipa presented evidence that demonstrated its good faith, which the Bankruptcy Court dismissed. Making such a factual finding on summary judgment is reversible error.

19.    The Trustee also states that Yucaipa did not provide any evidence of value received by Allied in exchange for the alleged fraudulent transfers. Opposition, 15. That is incorrect. Yucaipa presented substantial evidence that Allied received benefits in exchange for the transfers, and the Bankruptcy Court actually found that Allied had received many such benefits. *See, e.g.,* Opinion, at 68 (finding that "Allied indirectly benefited from the ComVest and Yucaipa Payments"). The Bankruptcy Court erred, however, in dismissing various evidence of other benefits received by Allied and in shifting the burden to Yucaipa to unequivocally prove that Allied received benefits that were reasonably equivalent to the value of the transfers in defending against the Trustee's motion for summary judgment.

### *Yucaipa Has Not Raised Any New Arguments In Its Motion*

20.    The Trustee contends that Yucaipa is raising for the first time the argument that the Trustee lacked standing to enforce the capital contribution provision. That is not true. Indeed, Yucaipa cited in its Motion to the pages of its summary judgment motion in which it made the arguments, as well as to the pages of the Opinion in which the Bankruptcy Court rejected it. *See* Motion, at 21.

21.    Moreover, the Trustee's argument that the court in *BDCM Opportunity Fund II, LP v. Yucaipa Am. Alliance Fund I, LP*, 2013 WL 1290394 (N.Y. Sup. Ct. Mar. 8, 2013)

concluded that Allied's execution of the Fourth Amendment was not knowing and voluntary is plainly misleading.  That court never reached that conclusion.[11]

### *The Covenant Not To Sue Bars The Trustee's Breach Of Contract Claim*

22.      As set forth in the Motion, Yucaipa is appealing the Bankruptcy Court's finding that the Covenant Not to Sue—which, on its face, bars claims arising from any capital contribution or related omission—did not bar the Trustee's contract claim.  The Opposition fails to address this argument and instead offers only the unsupported conclusion that the Bankruptcy Court's interpretation was correct.  Opposition at 18.  But, as set forth in the Motion, the Bankruptcy Court's interpretation ignores the fact that the covenant expressly bars claims based on "omissions," and the only possible omission in the context of the underlying agreement is the failure to make a capital contribution.  The Court, therefore, erred in concluding that the Covenant Not to Sue would have applied only if Yucaipa actually made the underlying capital contribution.

23.      Moreover, there is no merit to the Trustee's argument that Yucaipa waived the right to argue in the alternative that, to the extent the Court finds that the Covenant Not to Sue is susceptible to an interpretation different from the one Yucaipa is advancing, the covenant is ambiguous and its interpretation presents, at the very least, an issue of disputed fact.  Indeed, the Trustee cites no authority in support of such a waiver argument.  Moreover, the argument misrepresents' Yucaipa's position on summary judgment.  Yucaipa took the position that ***the Covenant Not to Sue unambiguously bars all claims related to a capital contribution,***

---

[11] Contrary to a statement made by the Trustee in its Opposition (at 11), Yucaipa has never admitted that it breached the capital contribution provision and is appealing that very issue, along with the findings reached by the Bankruptcy Court concerning the Trustee's fraudulent transfer and disallowance claims. The excerpt quoted from a hearing transcript in the Opposition – in which Yucaipa's counsel was simply restating arguments made by the Trustee *in the Lender Action* – are plainly taken out of context and do not constitute an admission of anything, let alone with respect to the breach of contract claim at issue in the Estate Action.

***including claims arising out of the failure to make such a contribution;*** no extrinsic evidence was necessary to support that argument.  Yucaipa will take that same position on appeal.  But, to the extent that the Court determines there is another plausible interpretation, Yucaipa will take the position that extrinsic evidence supports its interpretation of the covenant, and to the extent the Trustee were able to offer conflicting extrinsic evidence (it cannot), the interpretation of the Covenant Not to Sue presents a disputed issue of fact improper for summary adjudication. Yucaipa's summary judgment papers include a discussion of certain extrinsic evidence related to the Covenant Not to Sue and it could not have waived the right to develop such an argument on appeal.  *See* Appx. Exh. 33 (Yucaipa's reply to Trustee's summary judgment motion) at 22.

### Prejudgment Interest On The Fraudulent Transfer Award

24.     The Trustee argues that a plaintiff is entitled to prejudgment interest "as a matter of right" at Delaware's "customary" rate of 5% above the Federal discount rate, but fails to cite a single case in which prejudgment interest was awarded at that rate on fraudulent transfer claims, like those at issue here.  Indeed, the only case located by Yucaipa from within the Third Circuit in which a court awarded prejudgment interest on a fraudulent transfer claim under Delaware's fraudulent transfer statute applied the federal judgment rate.  *Burtch v. Opus, LLC (In re Opus East, LLC)*, 528 B.R. 30, 109 (Bankr. D. Del. 2015) ("The Court will . . .  award prejudgment interest on the fraudulent transfer claims from the date of the transfer until paid at the federal judgment rate applicable on the date of the transfer.").  Importantly, there is no evidence that the transfers at issue in this case were even avoided by reference to Delaware state law; the Bankruptcy Court recognized that the Trustee asserted claims by reference to the law of six different states, but the court never determined which state law applied.  *See* Opinion, at 47-48, 56 n. 154.

25.     Notably, the Trustee's fraudulent transfer claims were brought pursuant to section 544(b) of the Bankruptcy Code and the award in the Judgment was granted pursuant to section 550 of the Bankruptcy Code.  *See* Opinion, at 74 ("The Trustee has met her burden and may recover the value of the fraudulent transfers under 11 U.S.C. §§ 548(a)(1)(B), 544, and 550."). Courts within the Third Circuit have found that because "the award of prejudgment interest is a remedy provided by a federal bankruptcy cause of action, i.e., 11 U.S.C. §550(a), . . . the appropriate interest rate is determined by federal law." *David Cutler Indus. v. Bank of Am. (In re David Cutler Indus.)*, 502 B.R. 58, 80 (Bankr. E.D. Pa. 2013).  As the court explained in *David Cutler*:

> 11 U.S.C. §550(a), that provides the remedy for the transfer avoided under §544(b). That the preliminary claim under §544(b) happens to incorporate by reference the elements of state law in determining whether the transfer may be avoided is distinct from the express federal remedy provided once the transfer is avoided. Accordingly, I see the issue whether prejudgment interest should be awarded as a question of federal law arising under 11 U.S.C. §550(a), not state law. *Accord In re Harlin*, 325 B.R. 184, 192 (Bankr. E.D. Mich. 2005).

*Id*. at 79 n. 26.

26.     Accordingly, the Bankruptcy Court's use of Delaware's state interest rate on the Trustee's fraudulent transfer claims was inappropriate and unsupported by Third Circuit authority.

## II.     Irreparable Harm

27.     The Trustee argues that alleged constitutional harm does not create a presumption of irreparable harm.  Objection at 19.  That is simply not true.  "When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary."  *Conestoga Wood Specialties v. U.S. Dept. of HHS*, 724 F. 3d 377, 416 (3rd Cir. 2013) (quoting 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2948.1 (2d ed.1995)); *see also Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("The

loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."); *General Protecht Group, Inc. v. Leviton Mfg. Co.*, Case No. 10-1020, 2010 U.S. Dist. LEXIS 137160, *77, 2010 WL 5477266 (D.N.M. Dec. 7, 2010) (being forced to litigate on several fronts, and being deprived of bargained-for forum constitutes irreparable harm); *Ciena Corp. v. Nortel Networks*, Case No. 05-14, 2005 U.S. Dist. LEXIS 20095, *21, 2005 WL 1189881 (E.D. Tex. May 19, 2005) (citing deprivation of an Article III judge's court, inter alia, as establishing irreparable harm).[12]  Yucaipa has an unqualified constitutional right for the Trustee's non-core contract claims to be adjudicated by an Article III judge.  Any deprivation of that right – including through the enforcement of a massive damages award on a state law contract claim – constitutes irreparable injury.[13]

28.     The Trustee argues that Yucaipa will suffer no real harm even if the Bankruptcy Court lacked final authority to enter the Judgment, because the District Court will review the claims *de novo* in any event.  However, absent a stay, the Trustee will have the ability to enforce the Judgment immediately.  Given the size of the Judgment, this Court might well not have an opportunity to rule on the Trustee's claims before the Trustee renders Yucaipa incapable of pursuing the appeal.  This is not simply "speculation," as the Trustee contends.

## III.     No Bond Should Be Required

29.     Although the Trustee has made unfounded allegations that Yucaipa is dissipating assets and that Yucaipa has evaded discovery, neither is true.  Until recently, the Bankruptcy Court denied the Trustee's attempts to obtain discovery from Yucaipa and as soon as the

---

[12] Neither of the cases cited by the Trustee that are allegedly to the contrary involved a direct violation of a constitutional right. *See Hohe v. Casey*, 868 F.2d 69, 73 (3d Cir. 1989) (no irreparable harm where alleged violation of First Amendment rights was only "incidental"); *Norfolk S. Corp. v. Oberly*, 594 F. Supp. 514, 522 (D. Del. 1984) (purely monetary loss "based on speculation and uncertainty" did not deprive plaintiffs of alleged constitutional right to carry on interstate commerce).

[13] Notwithstanding the Trustee's contention that Yucaipa is not entitled to a jury trial, Yucaipa contends that it is entitled to a trial by jury on certain of the Trustee's claims and it intends to pursue that right on appeal.

DOCS_LA:339024.4 96991/001

Bankruptcy Court entered an order requiring Yucaipa to provide discovery, Yucaipa complied. Moreover, Yucaipa has voluntarily proposed that it will not make any further distributions to its limited partners while this appeal is pending.  The fact is that the Trustee has control over approximately $50 million in an escrow account, which provides adequate security to the Trustee during the pendency of this appeal.  Yucaipa should not need to also bond a substantial money judgment that was entered by a court without authority to enter that judgment.

## IV.    Public Interest

30.    As described in the Motion, the protection of Yucaipa's constitutional rights is in the public interest.  Yucaipa is not seeking to delay resolution of this litigation; it only seeks to enforce its right to have an Article III court adjudicate the Trustee's non-core claims, without the threat of the Trustee enforcing an improper judgment awarded by the Bankruptcy Court.

DOCS_LA:339024.4 96991/001

## <u>Conclusion</u>

WHEREFORE, for the foregoing reasons, Yucaipa respectfully requests that this Court (i) enter an order, substantially in the form attached to the Motion as **<u>Exhibit A</u>**, granting a stay of the enforcement of the Judgment pending final resolution of Yucaipa's appeal; and (ii) granting such other and further relief as the Court deems equitable and proper.

Dated:  July 23, 2021

PACHULSKI STANG ZIEHL & JONES LLP

*/s/ Laura Davis Jones*
Laura Davis Jones (DE Bar No. 2436)
David M. Bertenthal (CA Bar No. 167624)
Peter J. Keane (DE Bar No. 5503)
919 N. Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Fax: (302) 652-4400
Email: ljones@pszjlaw.com
         dbertenthal@pszjlaw.com
         pkeane@pszjlaw.com

-and-

GLASER WEIL FINK HOWARD AVCHEN &
SHAPIRO LLP
Patricia L. Glaser (*admitted pro hac vice*)
Gali Grant (*admitted pro hac vice*)
Matthew P. Bernstein (*admitted pro hac vice*)
10250 Constellation Blvd., 19th Floor
Los Angeles, CA 90067
Telephone: (310) 553-3000
Fax: (310) 556-2920
Email: pglaser@glaserweil.com
         ggrant@glaserweil.com
         mbernstein@glaserweil.com

Counsel for Yucaipa

14